Jasen, J.
(dissenting). Although the majority concedes, as it must, that the sole purpose of the Shield Law is to protect journalists from charges of contempt and that this *169 statutory “ ‘[e]xemption * * * from contempt’ cannot be fairly read to include general exemption from the sanctions authorized by CPLR 3126”, it, nevertheless, refuses to enforce the trial court’s disclosure order or to affirm that court’s order conditionally striking defendants’ answer unless defendants disclose to plaintiffs the identity of the letter writer. Because I do not believe the trial court abused its discretion in imposing a sanction specifically authorized by CPLR 3126 (subd 3), I respectfully dissent and vote to reverse the order of the Appellate Division.
Preliminarily, I note my complete agreement with the majority that section 79-h of the Civil Rights Law was enacted solely to protect journalists from being held in contempt for refusing to disclose the source of any particular news item. (NY Legis Ann, 1970, pp 33-34, 508.) I also agree that “the Legislature has never established an absolute right or granted journalists complete immunity from all legal consequences of refusing to disclose evidence relating to a news source” (majority opn, p 165) and that the Shield Law “cannot be fairly read to include general exemption from the sanctions authorized by CPLR 3126” (p 166). Thus, the majority today correctly eschews reliance upon the reasoning of the Appellate Division. Indeed, to hold otherwise would be to engage in a flagrant exercise of judicial legislation whereby journalists would be cloaked with absolute immunity from having to disclose the source of news reports. While it may be that such a law is desirable, the fact remains that the Legislature, which in our scheme of separation of powers is the body charged with making such determinations, has decided otherwise.
Notwithstanding the clear intent of the Shield Law not to exempt journalists from the sanctions authorized by CPLR 3126, the majority affirms the order of the Appellate Division upon the ground that the sanction imposed by the trial court — striking defendants’ answer — was unnecessary because the defendants agreed “to defend th[e] allegation of malice by relying on proof of its own independent investigation, without placing any reliance on its source.” It is with this reasoning, offered without supporting authority, that I cannot agree.
*170 In seeking enforcement of the court’s disclosure order, plaintiffs asserted that “the information sought goes to the heart of the plaintiffs’ libel action. It is an essential element in plaintiffs’ proof of malice; and may conceivably reveal that defendant newspaper had no reliable source, or that [its] reliance upon this particular source showed a reckless disregard for the truth.” Although the importance to plaintiffs of learning the author’s identity could not then and cannot now be seriously disputed, the disobedient defendants blithely replied that there was “no need” to strike the answer because they did not intend to make “affirmative use” of the anonymous author’s name in defending the action. However, defendants’ novel suggestion that they may control the course of plaintiffs’ lawsuit by dictating what plaintiffs may discover, simply stating that they do not intend to rely on certain information which is of great importance to plaintiffs’ case, in preparing their defense and thereby preclude plaintiffs from obtaining that information, is outrageous. Not only is such a rule grossly unfair to the innocent plaintiffs here, but it also ignores well-settled principles governing discovery procedures and distorts the adversarial process.
CPLR 3101 (subd [a]) makes clear what information may be obtained by parties to a lawsuit: “There shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action, regardless of the burof proof”. (Emphasis supplied.) We have consistently construed the discovery provisions of the CPLR liberally “to require disclosure ‘of any facts bearing on the controversy which will assist [parties’] preparation for trial’”. (Cynthia B. v New Rochelle Hosp. Med. Center, 60 NY2d 452, 461, quoting from Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406.) There can be no doubt that the identity of the letter writer in the case before us is relevant to the issue of malice. Indeed, plaintiffs’ ability to satisfy the standard set forth in New York Times Co. v Sullivan (376 US 254) by proving that defendants acted with actual malice in publishing the letter may well turn upon their learning the identity and, insofar as known, the motivation of the author.*
*171 Inasmuch as the information sought is relevant to the subject controversy and will assist plaintiffs in preparing for trial, it is discoverable pursuant to CPLR 3101 (subd [a]) and, as the majority concedes, the trial court correctly ordered disclosure. Thus, by wrongfully refusing to comply with the disclosure order the defendants subjected themselves to the penalties set forth in CPLR 3126 even though, by virtue of the Shield Law, they could not be held in contempt. The majority concedes this fact as well.
My departure from the majority, therefore, concerns the proper sanction to be imposed upon defendants for wrongfully refusing to comply with the court’s disclosure order. While we all agree that first and foremost the sanction imposed upon the disobedient defendants must adequately protect the plaintiffs’ interests (Feingold v Walworth Bros., 238 NY 446), the majority, without holding that the trial court abused its discretion in striking defendants’ answer pursuant to CPLR 3126 (subd 3), believes a different remedy, presumably less drastic, should have been imposed pursuant to CPLR 3126. However, a brief glimpse at the alternative sanction which the majority would impose — precluding defendants from “ ‘supporting or opposing designated claims’, or introducing evidence on a particular point” (CPLR 3126, subd 2) (majority opn, p 167) — reveals that it is no sanction at all and does nothing to protect plaintiffs’ interests in obtaining lawfully discoverable information such as the identity of the letter writer.
The majority would allow defendants to defy the lawful disclosure order and to deprive plaintiffs of important discoverable information simply because defendants promised not to use the information in preparing their defense. Furthermore, the sanction the majority favors would be meaningless because there would be no need for defendants to introduce evidence on the issue of malice if plain *172 tiffs were prevented from obtaining information — the letter writer’s identity — essential to the preparation of their case. Indeed, depriving plaintiffs of the information they seek and which this court agrees is discoverable will effectively sound the death knell for plaintiffs’ lawsuit. It is not surprising, therefore, that defendants themselves suggested such a sanction as an alternative to disclosure, for to allow this would be to effectively preclude a plaintiff from ever successfully prosecuting a defamation action against journalists. A rule which compels such a result should come from the Legislature, not this court.
To be distinguished from this case is a situation such as that in Feingold v Walworth Bros. (238 NY 446, supra). In that case, plaintiff sought discovery of documents necessary to establish the value of the corporate stock of which he alleged he was defrauded by defendants. Plaintiff claimed it was worth $200,000, while defendants pegged its value at $20,000. Since plaintiff sought the disputed records solely for purposes of proving the stock was worth $200,000, this court held that an order precluding defendants from asserting a claim that the value of the stock was less than $200,000, rather than an order striking defendants’ answer, was the appropriate sanction. The court correctly reasoned that the more limited sanction was adequate to fully protect plaintiff’s interest in securing the documents he requested and that a harsher penalty would exceed the court’s power to punish defendants for failing to obey an order of disclosure. By sharp contrast, the sanction the majority would impose in the instant case would not begin to protect plaintiffs’ interests.
Accordingly, I would reverse the order of the Appellate Division and reinstate the order of Supreme Court.
Chief Judge Cooke and Judges Jones, Meyer, Simons and Kaye concur with Judge Wachtler; Judge Jasen dissents and votes to reverse in a separate opinion.
Order affirmed, with costs. Question certified answered in the affirmative.

 By way of illustration, consider the following hypothetical situation: the anonymous letter writer was a reporter for the defendant newspaper who harbored a widely *171 known personal animosity toward the proprietors of the Oak Beach Inn and who had publicly declared long ago that he would some day make trouble for plaintiffs. Clearly, the letter writer’s identity would be relevant and extremely important to plaintiffs in helping them to prove that defendants acted with malice or in reckless disregard for the truth in publishing the allegedly defamatory letter. However, under the majority’s reasoning, plaintiff would never learn the author’s identity simply because defendants wrongfully refused to disclose it. Worse yet, the trial court would be powerless to order the defendants’ answer stricken pursuant to CPLR 3126 (subd 3) because defendants promised not to make “affirmative use” of the author’s identity in preparing their defense. Such a rule finds no support in the statutes, case law or logic.