**PAS–EBS, a joint venture, Plaintiff,**

v.

**GROUP HEALTH, INC., Defendant.**

**No. 76 Civ. 2781 (HFW).**

United States District Court,
S. D. New York.

April 12, 1977.

Greenbaum, Wolff & Ernst, New York City, for plaintiff, by Laurence Vogel, Sydney J. Schwartz, New York City, of counsel.

Trubin, Sillcocks, Edelman & Knapp, New York City, for defendant, by Dorothy F. Gray, New York City, of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

This is an action brought by PAS–EBS, a joint venture consisting of Professional Automated Services, Inc., hereinafter "PAS," and E.B.S. Data Processing, Inc., hereinafter "EBS," for breach of contract by the defendant Group Health Incorporated, hereinafter "GHI."

Plaintiff has set forth the following facts in the complaint. Plaintiff and its predecessor in interest, PAS, are the owners of a computer program and software package hereinafter referred to as the System. On February 20, 1973 PAS entered into a written contract, hereinafter the "Agreement," with GHI which granted to GHI an exclusive franchise and licensing rights for the System in the states of New York and New Jersey. In return for the granting of such rights GHI agreed to compensate PAS by paying royalties in amounts to be finally determined by a formula included in the Agreement. In addition, the Agreement committed PAS to provide several ancillary services to GHI relating to the operation of the System, and GHI was to compensate PAS for these services on the basis of other formulae contained in the Agreement.

The essence of plaintiff's claim is that although it has performed as promised, the defendant has breached the Agreement by failing to make the required royalty payments for each month from January 1975 through June 1976, and in addition by failing to pay for the ancillary services. Accordingly, plaintiff seeks a declaration that defendant has breached the Agreement as well as other declaratory and injunctive relief which it believes necessary to protect its rights, and damages of at least $39,-349.26.

Jurisdiction of plaintiff's action is based on diversity of citizenship. Plaintiff alleges

that the defendant is a New York Not-for-Profit corporation having its principal place of business in the State of New York, that PAS is a Florida corporation having its principal place of business in the State of Florida, and that EBS is a Delaware corporation having its principal place of business in the State of California.

In the complaint plaintiff has included a copy of the Agreement. Paragraph 14 thereof contains the following arbitration clause:

> "Should any dispute arise between the parties concerning the interpretation or application of the terms and provisions herein, such dispute shall be submitted to arbitration in the City of New York, pursuant to the rules and regulations of the American Arbitration Association then in effect."

GHI has moved under the Federal Arbitration Act, 9 U.S.C. §§ 3, 4 (1970), hereinafter the "Act," for an order staying this action pending arbitration and directing plaintiff to arbitrate separate but related claims upon which defendant had demanded arbitration on August 31, 1976, subsequent to the filing of this complaint on June 24, 1976.

The basis for defendant's motion is its assertion that the arbitration clause contained in the Agreement encompasses plaintiff's claim, and that therefore under § 3 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, this court should stay the proceedings pending arbitration of this dispute. Further, GHI claims that the breaching party is the plaintiff rather than itself. This is based on its contention that the contract between the parties consists not only of the Agreement, but also of a subsequent written modification of said Agreement embodied in a handwritten memorandum entitled "Amendment to GHI–PAS Franchise Contract of March 1973," hereinafter the "Amendment." GHI asserts that plaintiff's breaches of the contract as amended consist of the fact that: (a) PAS has transmitted proprietary rights to the System without complying with paragraph 15 of the Agreement,[1] and (b) payments due to it under the Amendment have not been made. GHI has set forth a copy of a Demand for Arbitration, which it caused to be issued to PAS on August 31, 1976, which indicates that GHI has sought to arbitrate the above alleged breaches. GHI seeks an order under § 4 of the Act compelling plaintiff to arbitrate these claims.

At the onset we should make clear those matters which are not at issue. There is no dispute that the contract, regardless of what it is alleged to consist of, is one which evidences a transaction involving interstate commerce and which contains a written arbitration clause. Moreover, the existence of a valid basis for diversity jurisdiction is unquestioned. Consequently, it is clear that the issues raised on this motion are to be resolved on the basis of the Act. Most specifically involved in this decision are §§ 2, 3 and 4 of the Act.[2]

### *Stay Pending Arbitration Under § 3*

The sole issue to be resolved is one of arbitrability, that is, whether the claim

---

1. Paragraph 15 provides in part that PAS is not to transfer the source documentation for the system or the proprietary rights thereto unless the recipient shall have agreed in writing to assume the agreement in its entirety.

2. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967) the Court summarized the relevant portions of the statute as follows:

   "Section 2 provides that a written provision for arbitration 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' Section 3 requires a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement. Section 4 provides a federal remedy for a party 'aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration,' and directs the federal court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored."

that plaintiff seeks to litigate is one which is properly referable to arbitration under the arbitration clause contained in the contract. The inquiry must be conducted in light of a federal policy favoring arbitration rather than judicial determination of disputes. In fact,

". . . in interpreting the scope of an arbitration clause, that is, in endeavoring to determine what the parties intended would be arbitrable federal courts are not to apply the traditional rules of construction, but rather a federal rule that seemingly requires a clearly expressed intent *not* to arbitrate an issue before such issue can be ruled one for judicial determination." *Singer Company v. Tappen Company*, 403 F.Supp. 322, 329 (D.N.J.1975).

*See, e. g., Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). We are mindful, however, that there are limits to this liberality of construction since arbitration is a creature of the contract and "[a]lthough the U.S. Arbitration Act looks favorably upon arbitration it does not dictate that we should disregard parties' contractual agreements that contain specific language outlining the boundaries of the areas intended to be arbitrable areas." *El Hoss Engineer & Transport Co. v. American Ind. Oil Co.*, 289 F.2d 346, 350 (2d Cir.), *cert. denied*, 368 U.S. 837, 82 S.Ct. 51, 7 L.Ed.2d 38 (1961).

The basis for plaintiff's opposition to the motion is that this arbitration clause is a "narrow" one, and that this claim is not one in which interpretation or application of the contract terms is involved.

I agree with plaintiff that this is not the "broadest" imaginable clause that could have been included in the contract. This clause would not mandate arbitration if, for example, the claim here was one of fraud in the inducement of the contract. *In Re Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961). Nonetheless I believe that this clause is broad enough to encompass the claim which plaintiff has in fact brought before this court. In reaching this conclusion I reject plaintiff's implicit definition of the word

interpretation as little more than to ascertain the plain meaning of words.

The process of contract interpretation is one by which the scope of the agreement of the parties, and their respective rights and obligations are determined. The present dispute, i. e., whether defendant has breached its contractual obligations, and the measure of damages, if any, resulting therefrom, is one which arises out of the respective rights and obligations of the parties under the contract and is arbitrable. The fact that plaintiff may prevail on the merits is not now relevant in view of the fact that "[i]n passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) and "[t]he duty to arbitrate is not diminished by the fact that the claim of one of the parties may be lacking merit." *Bigge Crane Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240, 244 (E.D.N.Y.1973). *Accord, Warren Brothers Co. v. Cardi Corp.*, 471 F.2d 1304 (1st Cir. 1973). Moreover, "[s]ection 3 makes no provision for preliminary trials of issues which have been or may be raised in an answer but commands a stay if the claim asserted in the complaint is one which is subject to the arbitration agreement." *Tepper Realty Co. v. Mosiac Tile Co.*, 259 F.Supp. 688, 693 (S.D.N.Y. 1966).

The cases cited by plaintiff do not support its contentions that the dispute in question is not arbitrable. They are distinguishable from the case under consideration simply on the basis of the fact that the arbitration clauses in those cases were ones which contained specific limitations on the arbitrability of claims.

For example, in *Butler Products Co. v. Unistrut Corp.*, 367 F.2d 733 (7th Cir. 1966), the arbitration clause applied only to those disputes arising within a specifically defined time period; in fact the court there was explicit in pointing out that "[t]his particular contract does not contain any

*broad clause* providing for arbitration of all disputes between the parties as to the meaning, *interpretation, and application of the contract* . . . ." *Id.* at 735 (emphasis added) In *Alco Standard Corp. v. Benalal,* 345 F.Supp. 14 (E.D.Pa.1972), the arbitration clause specifically precluded the availability of certain remedies from use by the arbitrator. In this case the arbitration clause contains no such specific limitations. Furthermore, both *Butler, supra,* and *Benalal, supra,* support the proposition that if the scope of the arbitration clause is even fairly debatable or reasonably in doubt then the matter should be referred to the arbitrator. Where, as here, the scope of the arbitration clause cannot be characterized even as debatable, there can be little doubt of the propriety of requiring arbitration.

I conclude that plaintiff's action should be stayed pending submission to arbitration as required by the Agreement.

### Compelling Arbitration Under § 4

Plaintiff opposes the aspect of defendant's motion seeking arbitration of its claim of breach by the plaintiff by asserting that no transfer violative of paragraph 15 of the Agreement has been made, and that the entire contract between the parties is embodied in the Agreement, the Amendment being merely a negotiating document which was never given the necessary approval, and hence which is of no legal significance. We offer no opinion as to the worth of plaintiff's contentions for at this stage such argument on the merits is misplaced in view of the fact that a ". . . federal court, in a suit asking it to compel arbitration, should . . . deal with no issues except (1) the making of an agreement to arbitrate, and (2) the failure, neglect or refusal of the other party to perform that agreement." *Reconstruction Finance Corp. v. Harrisons & Crosfield,* 204 F.2d 366, 368 (2d Cir.), *cert. denied,* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953). "A court's function in an action to compel arbitration is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Hamilton Life Ins. Co. of N.Y. v. Republic Nat. Life Ins. Co.,* 408 F.2d 606, 609 (2nd Cir. 1969). It must also be remembered that at this stage of the proceedings we must accept the moving party's version of the facts. *Shanferoke Coal & Supply v. Westchester Service Corp.,* 70 F.2d 297 (2nd Cir. 1934), *aff'd,* 293 U.S. 449, 55 S.Ct. 95, 79 L.Ed. 647 (1935); *Petition of Pahlberg,* 43 F.Supp. 761 (S.D.N.Y.1942). Finally, the fact that the arbitrator will be required, in resolving the dispute, to rule on the legal significance of the Amendment does not render arbitration an inappropriate forum because "[a]lthough the interpretation of the Agreement may raise issues of law, such issues may properly be entrusted to the arbitrator for decision." *Aeronaves de Mexico, S.A. v. Triangle Aviation Services, Inc.,* 389 F.Supp. 1388, 1391 (S.D.N.Y.1974).

Here there is no dispute as to the existence of the arbitration clause. The claims which defendant seeks to arbitrate are not frivolous or patently baseless, and there is no issue as to their arbitrability. Finally, plaintiff has not responded to defendant's demand for arbitration. Given the fact that the demand was filed on August 31, 1976 it can be assumed that plaintiff has failed to arbitrate defendant's claim within the meaning of the statute, 9 U.S.C. § 4.

Under these circumstances I believe that it is proper to order plaintiff to proceed to arbitration.

SO ORDERED.