**BLUE TEE CORP., Petitioner,**

v.

**KOEHRING COMPANY and AMCA International Corporation, Respondents.**

**BLUE TEE CORP., Plaintiff,**

v.

**KOEHRING COMPANY and AMCA International Corporation, Defendants.**

Nos. 90 Civ. 2654 (RWS), 90 Civ. 2701 (RWS).

United States District Court, S.D. New York.

May 13, 1991.

Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for petitioner/plaintiff (Robert L. Sills, of counsel).

Lord Day & Lord, Barrett Smith, New York City, for respondents/defendants (Warren H. Colodner, of counsel).

## OPINION

SWEET, District Judge.

Defendants/respondents Koehring Company and AMCA International Corporation (collectively "AMCA") have moved pursuant to Rules 12(b)(6), 56(b), 60(b)(6), and 62(b) of the Federal Rules of Civil Procedure and Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1970) to dismiss the complaint of plaintiff Blue Tee Corporation ("Blue Tee") in 90 Civ. 2701 (the "Injunction Action"), to compel Blue Tee to proceed to arbitration before the AAA pursuant to the parties' written agreement to arbitrate, and to stay all proceedings in 90 Civ. 2654 (the "Confirmation Proceeding") in which Blue Tee seeks to confirm the findings of Arthur Andersen & Co. ("Arthur Andersen") dated March 30, 1990, or alternatively to stay the entry and/or the enforcement as a money judgment or any judgment confirming Arthur Andersen's findings. Blue Tee has moved to clarify the judgment entered by the court on January 14, 1991 (the "Judgment"). The motions of AMCA are granted except with respect to a stay, and the motion of Blue Tee is granted as set forth below.

### Prior Proceedings

On April 20, 1990 Blue Tee filed its petition to confirm the arbitration award issued by Arthur Andersen on March 30, 1990 (the "Petition") and its complaint seeking (1) to enjoin the arbitration commenced by AMCA before the AAA in Charlotte, North Carolina (the "Charlotte Arbitration") in violation of the express terms of the Purchase Agreement, and (2) indemnity and reimbursement from AMCA for Blue Tee's attorneys' fees, costs and disbursements incurred in the litigation and in enforcing the Award, pursuant to the terms of the Purchase Agreement. On June 1, 1990, AMCA served its motion to vacate the Award.

On December 21, 1990, the court issued its opinion (the "Opinion") granting Blue Tee's petition to confirm, denying AMCA's motion to vacate, and denying Blue Tee's motion for sanctions, 754 F.Supp. 26. On January 14, 1991, the court signed the Judgment entered upon the Opinion.

On January 23, 1991, in response to Blue Tee's letter to the court of January 18, AMCA submitted an extensive letter setting forth its objections to the Judgment and enclosed its counter-proposal and an additional complete set of its motion papers on January 14. The counter-proposal recites "that the respective parties had no obligation to pay any sums to each other until further order of this Court." On January 24, 1991, Blue Tee submitted its letter response to the arguments set forth in AMCA's January 23 letter.

On January 30, after being advised by AMCA's counsel that the letters exchanged between the parties would be treated by the court as motions and that the motions would be heard by the court on February 11, Blue Tee consented to stay enforcement of the Judgment pending the disposition of the pending motions and AMCA agreed to place the amount currently owing to Blue Tee in an interest-bearing escrow account as security for the Judgment.

### The Motion To Compel Arbitration Is Granted

Section 12.15 of the Asset Purchase Agreement of May 26, 1989 (the "Purchase Agreement") provides in relevant part:

> *Arbitration.* Any dispute, controversy or claim arising out of or in connection with or relating to this Agreement ... shall be determined and settled by arbitration in the City of New York pursuant to the rules then in effect of the American Arbitration Association ...

The dispute between the parties concerns the proper interpretation and performance of their contract, including their last minute understandings.

The disagreements between AMCA and Blue Tee concerning the nature and intended effect of various last minute understandings pertaining to inventory valuations (the "Understandings") is a "controversy ... arising out of or in connection with or relating to" the Purchase Agreement though not part of the Section 3.1.1.1 arbitration conducted by Arthur Andersen. Similarly, AMCA's claim that Blue Tee committed fraud by purporting to agree to the Understandings with the intent to disown the Understandings when it came time to determine the final purchase price is clearly a "claim arising out of" the Purchase Agreement. Blue Tee, therefore, is bound by virtue of Section 12.15 of the Purchase Agreement to proceed to arbitration before the AAA.

*The Injunction Action Is Dismissed*

■ It is well-settled that where a defendant (such as AMCA in the Injunction Action) can establish that no relief can be granted to a plaintiff (such as Blue Tee) under any set of facts that could be proved consistent with the allegations of the complaint, defendant is entitled to dismissal of the complaint. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Branko International, Inc. v. Saudi Arabian Airlines*, 704 F.Supp. 386, 389 (S.D.N.Y.1989), *aff'd*, 880 F.2d 1318 (2d Cir.1989). Since AMCA is entitled to proceed to arbitration, this court should grant AMCA's motion to dismiss the complaint in the Injunction Action.

■ Where, as here, with Section 12.15 of the Purchase Agreement, an arbitration clause is a "broad" one, a court should compel arbitration and permit the arbitrator to decide whether the dispute falls within the clause. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63–64 (N.Y. 1983); *McAllister Brothers v. A & S Transportation Co.*, 621 F.2d 519, 523 (2d Cir.1980). Nor had an AAA arbitration

concerning the final asset purchase been decided either by Arthur Andersen or by this court except as to issues resolved in the Arthur Andersen Award.

As the Opinion noted:

The parties' situation in relation to the Arthur Andersen arbitration is unique in that the agreement contains two arbitration clauses, Section 12.15 and Section 3.3. Section 3.3 is the more specific clause, relating only to the valuation of certain inventory items as required pursuant to Sections 3.3 and 3.1 of the [Purchase] Agreement. As the parties in their Engagement Proposal agreed to arbitrate under Section 3.3, this opinion will consider the Arthur Andersen award only as it related to that section, without expressing any opinion on other issues that might fall under the arbitration clause contained in Section 12.15 of the [Purchase] Agreement.

The question remaining is whether the literal terms of Section 3.1.1.1 standing alone constitute the complete agreement of the parties and should govern, or whether a dispute exists with respect to contract interpretation that involves determining the intention of the parties as evidenced by their words and deeds at the time they entered into their contract in the light of the parties' conduct in setting the preliminary price and amending the Preliminary Statement of the Purchase Agreement. *See Concourse Beauty School, Inc. v. Polakov*, 685 F.Supp. 1311, 1316 (S.D.N.Y. 1988) ("whether the parties could orally modify their contract notwithstanding the clause providing only for written modification is a dispute ... arising out of or relating to the Contract and is therefore arbitrable"); *Klein Sleep Products v. Hillside Bedding Co.*, 563 F.Supp. 904, 905 (S.D.N.Y.1982) ("interpretation of the agreement [is] an exercise that should be left for the arbitrator"), *citing Bressette v. International Talc Co.*, 527 F.2d 211, 215 (2d Cir. 1975); *PAS–EBS v. Group Health Inc.*, 442 F.Supp. 937, 941 (S.D.N.Y.1977) (staying action and compelling arbitration; question whether amendment was merely a negotiating document or became part of

the parties' agreement was a legal issue that could properly be decided by the arbitrator). *Cf., McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 832–33 (2d Cir.1988) (selection of tax counsel as arbitrator indicative of parties' intention to submit only a narrow range of tax-related issues to arbitration).

Under Count II of the complaint in the Injunction Action Blue Tee sought indemnity pursuant to Section 11, the indemnity provision of the Purchase Agreement for its attorneys' fees, costs and disbursements incurred in both the Injunction Action and in 90 Civ. 2654, again a dispute which falls under the Purchase Agreement's general arbitration clause. Therefore, the Injunction Action will be dismissed.

*Enforcement Of The Judgment Will Not Be Stayed*

 AMCA has sought under Rule 60(b)(6) FRCP to justify a stay of enforcement of the Judgment pursuant to Rule 62(b). Rule 60(b)(6) provides, in part, that "the Court may relieve a party ... from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." As the Court stated in *Competex, S.A. v. La-Bow,* 783 F.2d 333, 335 (2d Cir.1986), "[t]he rationale underlying the use of rule 60(b) is to permit the District Court to correct an erroneous judgment and thereby avoid the necessity of an appeal." *Freschi v. Grand Coal Venture,* 103 F.R.D. 606, 608 (S.D. N.Y.1984) (citation omitted).

AMCA has failed to demonstrate any extraordinary circumstances justifying a stay or any undue hardship it will suffer if relief is not granted.

The essence of AMCA's claim is that the parties based the transaction not on discounted book value but on "good" and "bad" inventory. The existence of this issue, determined here to be arbitrable, does not bar the enforcement of the Arthur Andersen final Award and the Judgment.

The parties agreed when they engaged Arthur Andersen as arbitrator that "Arthur Andersen's decision will be final and binding." Such language constitutes consent to the entry of a judgment. *See, e.g.,*

*Milwaukee Typographical Union v. Newspapers, Inc.,* 639 F.2d 386, 389–90 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981); *Kallen v. District 1199,* 574 F.2d 723, 726 (2d Cir.1978). The Judgment submitted by Blue Tee, signed by the court and entered on its docket reflects the rulings set forth in the Opinion, and the relief sought in the Petition.

*An Amended Judgment Will Be Entered*

Consistent with the court's rulings as set forth in the Opinion (at 757), the Judgment states that interest runs from May 31, 1989, in other words, not including May 31. No modification is required in this regard, but calculations of the daily rate of interest under the "Citibank + 1%" formula have been challenged and should be recalculated.

No further amendment concerning the effect of the Opinion is required in view of what has already been set forth.

*Conclusion*

The motions of AMCA to compel arbitration and to dismiss the Injunction Action are granted, its motion to stay the Judgment is denied, and Blue Tee's motion to clarify the Judgment is granted as set forth above.

Settle an Amended Judgment on notice.

It is so ordered.